UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------x
FRANK MORA,

               Plaintiff,

vs.                                                **COMPLAINT**

NEW YORK STATE UNIFIED COURT
SYSTEM, OFFICE OF COURT
ADMINISTRATION, ANNE MINIHAN,
LAWRENCE MARKS, JUSTIN BARRY,
NANCY BARRY, ROSEMARY MARTINEZ-
BURGES, JENNIFER DiLALLO, SHAWN
KERBY, KEITH MILLER, LINDA DUNLAP-
MILLER, SCOTT MURPHY, MICHELLE
SMITH, JOHN SULLIVAN and DAN WEITZ,

               Defendants.
--------------------------------------------------x

      By and through his counsel, Michael H. Sussman, Esq., plaintiff states as against

defendants as follows:

### PRELIMINARY STATEMENT

      Plaintiff is one of two City Court Judges who serve the City of Poughkeepsie, New York.

Defendants have violated his rights under Title VII and the First Amendment by failing to grant

him a religious accommodation to their vaccination mandate despite his sincerely held religious

convictions and beliefs, have irrationally continued to enforce that mandate against him long

after desisting from the enforcement of any such mandate upon others who routinely use the

courthouse and have so deprived him of his ability to properly perform the job for which he was

appointed.

### I. PARTIES

      1. Plaintiff, Frank Mora, is a resident of the City of Poughkeepsie, within this judicial

district, and a duly appointed and sworn City Court Judge.  Plaintiff is a devout, knowledgeable,

and committed Catholic and has adhered to sincerely held religious beliefs which prohibit him from subjecting a healthy body to vaccinations and views such a practice as contrary to God's commandments as reflected in scripture and the Catechism of the Catholic Church to which he adheres.

2.  Defendant New York State Unified Court System, Office of Court Administration [hereinafter "UCS"] is a state agency which administers the several courts of the State of New York, including the Poughkeepsie City Court.

3.  At all relevant times, defendant Lawrence Marks served as Chief Administrative Judge for OCA and Anne Minihan served as the Administrative Judge for the Ninth Judicial District.

4.  At all relevant times, defendants Justin Barry, Nancy Barry, Rosemary Martinez-Burges. Jennifer DiLallo, Shawn Kerby, Keith Miller, Linda Dunlap-Miller, Scott Murphy, Michelle Smith, John Sullivan and Dan Weitz served as members of the Vaccine Exemption Committee [hereinafter "VEC"] which denied plaintiff a religious exemption from vaccination without providing any reason for this declination.

5. Each of defendants' actions and omissions as challenged herein were administrative in nature and none of the acts challenged herein involve the performance of any judicial function.

6.  Each of defendants' actions and omissions as challenged herein was undertaken under color of state law by persons trained in the law.

II. **JURISDICTION**

7.  As plaintiff contends that defendants violated rights protected by federal statutes and by the United States Constitution and as he timely filed a charge of religious discrimination against OCA with the EEOC [Exhibit 1], received a right to sue letter [Exhibit 2] and timely

initiates this action, this Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. sections 1331, 1343(a)(3) & (4), 42 U.S.C. secs. 1983, 1988 and pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. section 2000, et seq.

III. **STATEMENT OF FACTS**

8.   In or about August 2021, the Chief Judge of the New York State Court of Appeals promulgated a requirement that each employee of OCA, including plaintiff, must be vaccinated against COVID except if they qualified for a religious or medical exemption.

9.   Said order contemplated the granting of religious exemptions for those, like plaintiff, who have sincerely held religious beliefs which prohibit them from vaccinating and established a process by which an OCA employee could seek such an exemption.

10.   During the month of August 2021 and up through September 10, 2021, defendant OCA provided a COVID testing and masking alternative to mandatory vaccinations for its employees, including plaintiff.

11.   This policy was last memorialized and circulated to plaintiff on September 1, 2021 with the announcement that "the Unified Court System will begin its mandatory COVID-testing program on September 7, 2021."

12.   This program provided an alternative to vaccination for employees, including for judges.

13.   On September 10, 2021, defendant Marks circulated a memorandum stating that "the Unified Court System will require all judges and employees to submit proof of COVID-19 vaccination by September 27, 2021, or submit and obtain approval for a medical or sincerely-held religious exemption."

14.   Defendant Marks' memorandum advised recipients that any of them could file for a medical or religious exemption and, if seeking the latter, required an applying judge to submit "a signed notarized statement detailing the religious basis for his/her objection to COVID-19 vaccination and the religious principle[s] that guide the objections to COVID-19 vaccinations."

15.   The memorandum also explained that judges granted religious exemptions would have "to submit weekly proof of testing."

16.   The memorandum further proscribed that judges denied a religious exemption would have ten business days from notification to submit proof of their vaccination but did not otherwise indicate the consequence for a judge denied a religious exemption.

17.   Defendant Unified Court System [UCS] circulated an application for religious exemption which included the following: "to further its commitment to provide equal employment opportunities without regard to any protected status and a work environment that is free of unlawful harassment, discrimination and retaliation, UCS complies with all laws protecting religious beliefs and practices.  Upon request, UCS will grant a religious exemption for sincerely held religious beliefs and practices which prohibit a judge or employee from receiving a COVID-19 vaccination."

18.   Defendant UCS permitted judges seeking a religious exemption to continue to work at court facilities while their applications were being reviewed so long as they comply with "COVID-19 testing and other preventative requirements."

19.   Plaintiff duly and timely sought a religious accommodation on account of his sincerely held religious beliefs, submitting a written application which explicated his sincerely held religious beliefs.

20.  In his application, plaintiff detailed the religious and scriptural bases for his sincerely held religious beliefs and submitted that, as an adult, he had never violated those precepts and taken a vaccination.  The content of his application is incorporated herein by reference and is Exhibit 3 hereto.

21. In his application, plaintiff affirmed that "vaccination is contrary to my sincerely held religious beliefs and practices, and that my objections to this vaccination are not based solely on grounds of personal concerns, preferences, or beliefs; or inconveniences; or intellectual beliefs or philosophy."

22.  In his application, plaintiff also acknowledged that he could be subjected to administrative discipline if he supplied false information in support of this application for a religious exemption.

23.  Defendant UCS organized a Vaccine Exemption Committee [hereinafter "VEC"] to evaluate and pass upon employee requests for religious exemptions.

24.  Defendant UCS advised plaintiff that VEC would be divided into two "working groups," identified as working groups A and B.

25.  Each working group contained five or six members and VEC's counsel advised plaintiff on November 10, 2021 that, "[a] minimum of three voting members are required for a working group to make a determination upon any exemption request."

26.  Counsel further advised plaintiff that "the determination of the Committee is final. i.e., there is no administrative/internal mechanism for appealing the determination of the Committee."

27.  Counsel further advised plaintiff, "[t]he standards applied to religious exemptions...are the standards for vaccine exemption in the Second Circuit, under federal employment law and the First Amendment."

28.  Counsel identified the following persons, herein named as defendants as members of the VEC: Justin Barry, Nancy Barry, Rosemary Martinez-Burges, Jennifer DiLallo, Shawn Kerby, Keith Miller, Linda Dunlap-Miller, Scott Murphy, Michelle Smith, John Sullivan and Dan Weitz.

29.  Upon information and belief, defendant UCS provided the VEC's members with no training or guidance on the legal principles to be employed in determining whether an applicant had a sincerely held religious belief which prohibited vaccination.

30. The VEC did not meet with plaintiff to discuss his request for a religious exemption and did not offer plaintiff that opportunity.

31.  On November 4, 2021, an unidentified representative from defendant UCS advised plaintiff that the VEC had reviewed his request for a religious exemption and required additional information.

32.  Specifically, the VEC made five inquiries of plaintiff which misconstrued his application for religious exemption, suggesting that he had initially represented that he did not or would not use medications in the case of serious illness.

33.  Plaintiff made no such representation; instead, he explained that his religious beliefs prohibited him from subjecting a healthy person to vaccinations, not that he had a religious belief prohibiting a person in need from utilizing medication.

34.  Plaintiff timely responded [by November 12, 2021] to the VEC's five questions and provided a narrative which attempted to clarify VEC's apparent misunderstanding of his religious beliefs.

35.  Plaintiff's response represented that he had never taken a vaccine upon reaching the age of majority and reiterated that he had fully explicated his religious beliefs in his initial application.

36.  Between September and December 2021, while the panel assigned his case deliberated, plaintiff regularly came to work at the Poughkeepsie City Court.

37.  On December 23, 2021, while granting other like applications for religious exemptions, the VEC denied plaintiff's request for a religious accommodation, without any explication for their action.

38.  In a letter to plaintiff signed by "UCS Vaccination Exemption Committee," plaintiff was provided no reason for the denial. [Exhibit 4].

39.  Without further explanation, defendant Marks implemented this determination and directed that plaintiff produce proof of his vaccination within ten days.

40.  On or about December 28, 2021, plaintiff filed a charge of unlawful discrimination with the New York State Division of Human Rights; therein, he explained that other Catholics and people of different faiths had been provided religious exemption but that, without explanation, his request for the same exemption was denied, representing religious discrimination.

41.  On January 3 and 4, 2022, after plaintiff reiterated to Her Honor that being vaccinated would violate his sincerely held religious beliefs and, therefore, was not an option for him, at the direction of defendant Marks, defendant Minihan sent plaintiff several

communications prohibiting him from entering any courthouse in the State of New York, including the one at which he routinely worked, and consigned him to work virtually and off premises.

42.  These orders continue in full force and effect and have prevented plaintiff from fully performing his judicial role and/or in participating in more banal activities with fellow staff.

43.  Upon receipt of this barment order, plaintiff inquired whether "unvaccinated attorneys, litigants, jurors, and members of the public are allowed to enter [UCS] facilities."

44.  Defendant Minihan responded to this inquiry by referring plaintiff to the UCS Covid-19 Safety and Operational Protocols.

45.  The following day, plaintiff reiterated his query, "I'm still at a loss as to how I am barred from "any USC facility" until I submit proof of vaccination (which I cannot do based on my sincere and genuinely held religious beliefs), while unvaccinated attorneys, litigants, jurors and members of the public are allowed to enter the facilities, as well as unvaccinated judges/non-judicial staff who received a medical or religious exemption."

46.  To plaintiff's inquiry whether he could enter the court facility after hours to retrieve belongings or drop off papers, defendant Minihan advised plaintiff that he could enter the City Court "while court is open" to retrieve personal belongings or to drop off papers or files.

47.  In succeeding weeks, defendant UCS ordered plaintiff to desist from conducting criminal proceedings, a substantial share of a City Court Judge's workload, and re-assigned this central responsibility solely to the other City Court Judge.

48.  On January 31, 2022, defendant Minihan issued an Administrative Order which allowed plaintiff to "preside over (1) civil matters where the litigants have mutually consented to

the Judge appearing virtually and (2) the issuance of Decisions and Orders on motions submitted

on criminal matters where no appearances are required."

49  Combined with the order barring him from the courthouse, such treatment disallowed

Judge Mora from discharging a substantial share of the duties to which he was appointed to

perform, humiliated, and embarrassed him.

50. On March 2, 2022, counsel for defendant UCS explained [for the first time]

counsel's understanding of the VEC's denial of plaintiff's request for religious exemption,

"Complainant failed to provide the VEC with the necessary information to determine if his

request was based on a sincerely held religious belief."  This statement was demonstrably false

as plaintiff did fully respond to each of the supplementary questions posed in early November by

VEC and plaintiff was never advised of any deficiency in his response.

51.  The VEC's counsel further claimed without basis, "His answer in response to

question 1 conflicts with his alleged beliefs, and his failure to provide sufficient details of his

religious beliefs in response to question 2 prevented the VEC from being able to determine what,

if any, belief or religious tenet prevents him from taking the COVID-19 vaccine, apart from his

"conscience."  His submitted statements did not articulate a consistent reason for why he refused

some medical treatments, such as vaccines and immunizations, and not other types."

52.  Again, this rationale entirely misconstrued the nature of plaintiff's clearly stated

religious beliefs and represents a blatant intrusion and entangling of church and state prohibited

by the First Amendment.

53.  On January 6, 2022, defendant Marks wrote the New York State Commission on

Judicial Conduct ["the Commission"], "Poughkeepsie City Court Judge Frank Mora submitted a

request for a religious exemption.  That request was ultimately denied on December 23, 2021,

and in accordance with stated policy Judge Mora was required to submit proof of COVID-19 vaccination (one dose) within ten days.  As of this date, Judge Mora has failed to do so. Accordingly, I am referring this matter to the Commission for its consideration and appropriate action."

54.  Defendant Marks' action was neither dictated by any state law nor policy and in so proceeding, defendant Marks exercised his discretion and was under no directive or order to so report plaintiff for investigation and discipline.

55.  In advance of this referral to the Commission, defendant Marks never advised Judge Mora that adherence to his religious beliefs would or could cause a referral of a judge to the Commission or prompt an investigation of potential misconduct by the Commission.

56.  The Commission has yet to take final action on defendant Marks' referral after more than eleven months of investigating it, but it has made intrusive inquiries into plaintiff and his families' medical records, and his children's school records, seeking to corroborate the VEC's baseless conclusion that his religious beliefs are not sincerely held.

57.  In April 2022, plaintiff sought leave from defendant Minihan to attend a Judicial Summer Seminar, hosted by the Judicial Institute and providing continuing education for judges in late June or July 2022 at a private venue.

58.  At the time he sought such leave, defendant UCS did not require people entering its courts to demonstrate any form of compliance with vaccination mandates.

59.  Defendant Minihan advised that defendant UCS disallowed plaintiff from attending this training based on what she described as "the unfit letter."

60.  In September 2022, in light of the fact that defendant UCS no longer required persons entering the courthouse to wear masks and did not check the vaccination status of anyone entering the courthouse, plaintiff sought permission to enter the courthouse.

61.  Defendant Minihan responded, "since you are not in compliance with our vaccination policy, you're not permitted in the court facility.  This is not something that is subject to any further accommodation than that which has already been made."

62.  On September 21, 2022, in light of the radically changed circumstances, including the significant diminution of the threat caused by COVID and the fact that OCA never required anyone visiting the courts to show proof of vaccination, plaintiff again applied for a religious exemption, to wit, he sought leave to resume performing the full array of his duties at the courthouse.

63.  On September 27, 2022, through its counsel, VEC refused to consider plaintiff's request for a religious exemption though he had initially been advised that even a successful application for such exemption has only a one-year life and, in this light, he re-applied for an exemption.

64. Defendant UCS's Administrative Counsel advised plaintiff that the prior decision by the VEC was "final" and that it would not review his new application or otherwise further respond.

65. To this date, defendants continue to bar plaintiff from the Poughkeepsie Courthouse and every other courthouse in the entire State of New York, consigning him to significantly reduced duties which demean him and disallow him from fulfilling the responsibilities the Mayor of the City of Poughkeepsie appointed him to perform.

66.  Failing to recognize the change in circumstances and in further retaliation against him for seeking a religious exemption, defendants refused even to consider plaintiff's renewed application for a religious exemption, refusing still to recognize his sincerely held religious beliefs and irrationally applying an outdated and otherwise unenforced regulation requiring that he be vaccinated before returning to the full panoply of his duties.

67.  To this date, plaintiff remains in exile, barred from his courtroom and the courthouse and disallowed from performing the full array of duties of a City Judge.

68.  By and through the course of treatment outlined above, defendants have jointly and severally caused plaintiff substantial emotional distress and embarrassment and violated his sacred right not to be stigmatized, punished or excluded from the performance of his public duties on account of his sincerely held religious beliefs.

## AS AND FOR A FIRST CAUSE OF ACTION

69.  Plaintiff incorporates paras. 1-68 as if fully re-written herein.

70.  By wrongfully failing to recognize his sincerely held religious beliefs without any explanation of the basis for the denial, denying him a religious exemption and barring him from his place of employment and the ordinary and routine tasks associated with his job as a City Court Judge, defendant OCA violated, and continues to violate, Title VII of the Civil Rights Act of 1964 which disallows discrimination on the basis of religion and assures that those like plaintiff will be able to exercise their religious liberty except under compelling circumstances where no alternatives to abridgment of those rights exists, conditions which never obtained here.

## AS AND FOR A SECOND CAUSE OF ACTION

71.  Plaintiff incorporates paras. 1-70 as if fully re-written herein.

72. By wrongfully failing to recognize his sincerely held religious beliefs, denying him a religious exemption and barring him from his place of work, individual defendants Justin Barry, Nancy Barry, Rosemary Martinez-Burges. Jennifer DiLallo, Shawn Kerby, Keith Miller, Linda Dunlap-Miller, Scott Murphy, Michelle Smith, John Sullivan and Dan Weitz violated his right to free exercise of religion as protected by the First Amendment to the United States Constitution as made actionable pursuant to 42 U.S.C. section 1983.

**AS AND FOR A THIRD CAUSE OF ACTION**

73. Plaintiff incorporates paras. 1-72 as if fully re-written herein.

74. By referring plaintiff for disciplinary action based upon his sincerely held religious beliefs, defendant Marks violated plaintiff's right to free exercise as guaranteed by the First Amendment to the United States Constitution as enforced through 42 U.S.C. section 1983.

**AS AND FOR A FOURTH CAUSE OF ACTION**

75. Plaintiff incorporates paras. 1-74 as if fully re-written herein.

76. By imposing and enforcing prohibitions against him in an overbroad, selective and irrational basis, defendants UCS, Marks and Minihan have each violated plaintiff's free exercise rights as guaranteed by the First Amendment to the United States Constitution as enforced through 42 U.S.C. section 1983.

**AS  AND FOR A FIFTH CAUSE OF ACTION**

77. Plaintiff incorporates paras. 1-76 as if fully restated herein.

78. Defendants Justin Barry, Nancy Barry, Rosemary Martinez-Burges. Jennifer DiLallo, Shawn Kerby, Keith Miller, Linda Dunlap-Miller, Scott Murphy, Michelle Smith, John Sullivan and Dan Weitz denied plaintiff equal protection of the law by denying his religious exemption application at the same time they granted more than five hundred such exemption applications

13

from similarly-situated persons, as defined by persons who, like plaintiff, have a sincerely held religious belief and are permitted, as plaintiff is not, to carry on their duties and responsibilities from their job sites.

**PRAYER FOR RELIEF**

**WHEREFORE** plaintiff prays that this Honorable Court accept jurisdiction over this matter, empanel a jury to hear all issues within its authority, award to plaintiff compensatory damages for the violation of his statutory and constitutional rights, award punitive damages against the named individual defendants for the wanton violation of the Free Exercise clause of the United States Constitution, preliminarily and permanently enjoin defendants from continuing to deprive plaintiff of his right to free exercise of his religion, order and direct defendants to recognize plaintiff's sincerely held religious beliefs and provide him an exemption from any and all vaccinations mandates, order defendants to allow plaintiff to return to his workplace at the City Court of the City of Poughkeepsie, award to plaintiff and against defendants the attorneys' fees and costs arising from this matter pursuant to 42 U.S.C. section 1988 and enter any other relief which law and/or equity requires.

Dated:  December 5, 2022

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

SUSSMAN & ASSOCIATES
PO BOX 1005
1 RAILROAD AVENUE, STE 3
GOSHEN, NY 10924
(845)-294-3991
Sussman1@sussman.law

Counsel for Plaintiff Mora