UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
FRANK MORA,                                          :
                        Plaintiff,                   :
                                                     :
v.                                                   :
                                                     :
NEW YORK STATE UNIFIED COURT                         :
SYSTEM, OFFICE OF COURT                              :
ADMINISTRATION; TAMIKO AMAKER,                       :        **OPINION AND ORDER**
ANNE MINIHAN; LAWRENCE MARKS;                        :
JUSTIN BARRY; NANCY BARRY;                           :        22 CV 10322 (VB)
ROSEMARY MARTINEZ-BURGES;                            :
JENNIFER DILALLO; SHAWN KERBY;                       :
KEITH MILLER; LINDA DUNLAP-MILLER;                   :
SCOTT MURPHY; MICHELLE SMITH;                        :
JOHN SULLIVAN; and DAN WEITZ,                        :
                        Defendants.                  :
--------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Frank Mora, a City Court Judge for the City of Poughkeepsie, New York, brings

this action against his employer, the New York State Unified Court System, Office of Court

Administration ("OCA"), and individual defendants Tamiko Amaker, Anne Minihan, Lawrence

Marks, Justin Barry, Nancy Barry, Rosemary Martinez-Burges, Jennifer DiLallo, Shawn Kerby,

Keith Miller, Linda Dunlap-Miller, Scott Murphy, Michelle Smith, John Sullivan, and Dan

Weitz (together, the "Individual Defendants").  He alleges defendants violated Title VII of the

Civil Rights Act of 1964 and plaintiff's First and Fourteenth Amendment rights by denying him

a religious exemption to OCA's COVID-19 vaccine policy.

        Now pending are OCA's and the Individual Defendants' motions to dismiss the second

amended complaint, each pursuant to Rules 12(b)(1) and 12(b)(6).  (Docs. ##73, 81).

        For the reasons set forth below, the motions are GRANTED.

        The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the second amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.    COVID-19 Vaccine Religious Exemption Request

Plaintiff is a "duly appointed and sworn" City Court Judge sitting in Poughkeepsie, New York.  (Doc. #94 ("SAC") ¶ 1).  He describes himself as a "devout, knowledgeable, and committed Catholic."  (Id.).

Plaintiff contends that, in August 2021, the Chief Judge of the New York Court of Appeals promulgated a requirement that all OCA employees, including judges, be vaccinated against COVID-19 unless an employee applied for, and was granted, a religious or medical exemption (the "Vaccine Mandate").

On September 10, 2021, defendant Lawrence Marks, the former Chief Administrative Judge for OCA, circulated a memorandum requiring all judges to "obtain and submit proof of COVID-19 vaccination by September 27, 2021 or submit and obtain an approval for a medical or sincerely-held religious exemption." (Doc. #74-3 (the "Marks Memorandum" at ECF 1);[1] see also SAC ¶ 13).[2]  To seek a religious exemption, a judge had to submit "a signed and notarized statement detailing the religious basis for his/her objection to COVID-19 vaccination and the

---

[1]    "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

[2]    OCA submits a copy of the Marks Memorandum with its motion to dismiss.  The Court may consider the Marks Memorandum because plaintiff heavily relies on its terms in framing his allegations, including by quoting from it in the SAC.  See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808–09 (2d Cir. 1995) (documents partially quoted in the complaint were integral to the complaint and could be considered on a Rule 12(b)(6) motion).

religious principle(s) that guide the objections to COVID-19 vaccination." (Marks Memorandum at ECF 2).

Judges who received a religious exemption were provided an expiration date for the exemption and required to submit weekly proof of testing. Judges who were denied a religious exemption had to submit proof of their first vaccination within ten business days after being notified of the denial.[3]

OCA created a Vaccine Exemption Committee ("VEC") to evaluate employee requests for religious exemptions. According to the SAC, the following Individual Defendants are members of the VEC: Justin Barry, Nancy Barry, Rosemary Martinez-Burges, Jennifer DiLallo, Shawn Kerby, Keith Miller, Linda Dunlap-Miller, Scott Murphy, Michelle Smith, John Sullivan, and Dan Weitz (together, the "VEC Defendants").

Plaintiff alleges the VEC was comprised of two working groups, and that a minimum of three voting members was required for a working group to decide on an employee's vaccine exemption request. The VEC's determination to grant or deny an exemption request was allegedly final: there was "no administrative/internal mechanism for appealing" the VEC's determination. (SAC ¶ 26).

Plaintiff submitted an application for a religious exemption on September 21, 2021—his affidavit submitted therewith is attached to the SAC. (SAC at ECF 32).[4]

---

[3]    Two doses of the COVID-19 vaccine were required to be considered "fully vaccinated," but the Vaccine Mandate allowed additional time for a judge to obtain the second dose after being denied a religious exemption. (Marks Memorandum at ECF 1).

[4]    Because the SAC and its exhibits were filed as one document, the Court refers to the applicable "ECF" page number when referring to exhibits to the SAC.

In the affidavit, plaintiff states he has been Roman Catholic since his baptism in 1970, and has held several positions with a church and studied scripture.  He states he has claimed exemption from all vaccinations since the birth of his three children, the oldest of whom was seventeen years old at the time of his exemption request.  He says he is "opposed to <u>all</u> immunizations," including the New York vaccine mandate for public schools enacted by "the NYS Legislature and the former disgraced Governor" that "unethically kicked [his children] out of school in 2019."  (SAC at ECF 35).  He discusses the founding of the United States on religious freedom, an "unalienable right," and laments how "[w]hen we as a society demand that parents, and now adults, prove they have 'sincere religious beliefs,' we truly are going down a slippery slope."  (<u>Id.</u>)

He identifies the  "Catechism of the Catholic Church" as "the supreme teaching authority of the Catholic Church" and purports to quote from scripture throughout the affidavit.  (SAC at ECF 35).  For example, he includes the following quote, attributed to Matthew 12: "People who are in good health do not need a doctor; sick people do."  (SAC at ECF 37).

 He concludes by saying vaccinating himself against COVID-19 "would be an act of violence against my conscience, and thus, an evil," and that "[i]t is my sincere religious conviction and belief that God has created us whole, with everything we need to grow according to His natural ways, and to vaccinate is a violation of God's way."  (SAC at ECF 38).

On November 4, 2021, the VEC sent plaintiff an email stating the VEC had considered his application, but "requires more information before it can make a final determination," attaching a supplemental form.  (Doc. #74-5 at ECF 1).[5]  Section B of the supplemental form

---

[5]     Because plaintiff's allegations concern the contents of the VEC's November 4 email and plaintiff's response via submitting a supplemental form, the November 4 email, its attachments, and plaintiff's supplemental response, all of which were submitted by OCA with its motion, can

states:

> You have provided information in a previous statement indicating that your religious faith calls for you to abstain from medicines and vaccines due to concerns regarding the sanctity of your body or its purity.  Please answer the questions below to allow us to gain a better understanding of your beliefs.
>
> 1. Please list all the medicines, medical treatments and procedures, vaccines, and/or foods that you abstain from due to your religious beliefs:
>
> 2. Please list the date you began to abstain from the above listed medicines and vaccines and/or other medical treatments:
>
> 3. Please provide a detailed explanation as to why your relpigious faith requires you to abstain from the listed substances in question 1.
>
> 4. Have you received an influenza (flu), pneumonia, tetanus, shingles, HPV or any other type of vaccine since turning 18 years of age? If yes, please specify the type of vaccine(s) and when it/they was/were administered.
>
> 5. If you listed any vaccines in question 4, please explain how your religious beliefs permit you to take these vaccines but prohibit the taking of a COVID-19 vaccine.

(Id. at ECF 6).

Plaintiff submitted a response to the supplemental form on November 12, 2021.  (Doc. #74-6 ("Supplemental Response")).  In response to question one, plaintiff stated he "fully stated my personal deeply held and sincere religious beliefs regarding vaccines" in his original affidavit.  (Id. at ECF 4).  He also stated his family "does not take any medicines" and that he would "not speculate" if they would in the future because "it is impossible to comment on something of which I have no knowledge."  (Id.).  He also stated there "is no comparison to taking a vaccine to possibly prevent a future disease (please read my [original affidavit] for an

---

be considered in deciding the instant motions.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (a documents is integral to a complaint "where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint").

Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

in-depth explanation of this issue), and taking a medicine or having a medical treatment or procedure to help a body suffering from a crisis."  (Id.).  In fact, plaintiff stated "[i]f my body was in crisis, I would consider all of the options available to me, and discuss what to do with my doctor," as well as "consult the Bible, the Catechism of the Catholic Church, and pray to God for guidance."  (Id.).

Plaintiff answered question two by saying he began to abstain from vaccines when he was eighteen years old, question three by referring back to his original affidavit, and questions four and five with "No" and "N/A," respectively.  (Supplemental Response at ECF 4).

On December 23, 2021, plaintiff received an email from "NYCourts" denying his exemption request.  (SAC at ECF 40).  The email attached a letter from the VEC, dated December 23, 2021, directing plaintiff to "submit proof of the first dose of [his] COVID-19 vaccination" by January 3, 2022.  (Id. at ECF 41).

Plaintiff alleges he does not know which VEC Defendants ruled on his exemption request, and that the VEC did not meet with him to discuss his request.

On January 3 and 4, 2022, plaintiff alleges defendant Anne Minihan, the Administrative Judge for the Ninth Judicial District, sent him several communications prohibiting him from entering any courthouse in the State of New York, including the courthouse where he worked. Instead, he was allegedly directed to work "virtually and off premises."  (SAC ¶ 41).  According to plaintiff, she sent these communications after plaintiff reiterated that getting vaccinated would violate his sincerely held religious beliefs.  Plaintiff claims he was only permitted to enter the courthouse to retrieve his personal belongings and drop off papers while court was open.  He alleges these restrictions remained in force until February 17, 2023.

Plaintiff contends he immediately took issue with these limitations because, according to him, unvaccinated attorneys, litigants, jurors, and members of the public were allowed to enter the facilities without proof of vaccination.

For approximately one month, plaintiff alleges OCA ordered him "to desist from conducting criminal proceedings," which, in plaintiff's view, comprised a substantial share of his duties as a judge.  (SAC ¶ 47).  He claims his criminal case responsibilities were reassigned to the other Poughkeepsie City Court judge.  He also contends he was prohibited from sitting as a presiding judge in county and family courts.

On January 31, 2022, plaintiff alleges defendant Minihan issued an Administrative Order allowing him to "preside over (1) civil matters where the litigants have mutually consented to the Judge appearing virtually and (2) the issuance of Decisions and Orders on motions submitted on criminal matters where no appearances are required."  (SAC ¶ 49).

Plaintiff alleges these limitations humiliated and embarrassed him.

On March 2, 2022, plaintiff alleges counsel for OCA "false[ly]" informed plaintiff his exemption request had been denied because he failed to provide information necessary for the VEC to determine if his request was based on a sincerely held religious belief.  (SAC ¶ 52).  Plaintiff alleges counsel for OCA further explained:

> [Plaintiff's] answer in response to question 1 conflicts with his alleged beliefs, and his failure to provide sufficient details of his religious beliefs in response to question 2 prevented the VEC from being able to determine what, if any, belief or religious tenet prevents him from taking the COVID-19 vaccine, apart from his "conscience."  His submitted statements do not articulate a consistent reason for why he refused some medical treatments, such as vaccines and immunizations, and not other types.

(SAC ¶ 53).  According to plaintiff, this response from OCA's counsel "represents a blatant intrusion and entangling of church and state prohibited by the First Amendment."  (SAC ¶ 54).

In April 2022, plaintiff alleges he sought leave from Administrative Judge Minihan to attend a judicial seminar in June or July 2022 at a private venue, but she denied him permission to attend "based on what she described as 'the unfit letter.'"  (SAC ¶ 75).

On September 21, 2022, plaintiff alleges he again applied for a religious exemption and for leave to resume performing his duties at the Poughkeepsie courthouse.  Plaintiff contends that, at this time, there had been a "significant diminution of the threat caused by COVID" and OCA "never required anyone visiting the courts to show proof of vaccination."  (SAC ¶ 81).  Nevertheless, on September 27, 2022, plaintiff was purportedly informed the VEC's prior decision was final and it would not review his new application, even though he had "initially been advised that even a successful application for such exemption had only a one-year life."  (SAC ¶ 82).

In November 2022, plaintiff alleges he again sought permission to enter the Poughkeepsie courthouse.  By this time, plaintiff alleges OCA no longer checked the vaccination status of persons entering the courthouse or required them to wear masks, and that the United States Centers for Disease Control and Prevention guidelines had changed to suggest that unvaccinated persons not be excluded from their places of employment.  However, plaintiff alleges Minihan denied his request because plaintiff was not in compliance with the Vaccine Mandate.

Plaintiff purportedly worked alone from his basement until February 17, 2023, when the Vaccine Mandate was repealed and the restrictions on his access to the courthouses were lifted.[6]

---

[6]     Although the repeal of the Vaccine Mandate is not specifically alleged in the SAC, there is no dispute that it was repealed effective February 17, 2023.  (See Doc. #68 at ECF 2–4 (letter from plaintiff's counsel attaching memorandum from defendants Nancy Barry and Justin Barry to all OCA employees dated February 15, 2023, announcing the repeal of the Vaccine Mandate effective February 17, 2023).

Plaintiff alleges two Orange County Court judges, identified as W.P. and C.B., are married and Catholic and "attended church together for years and shared strongly held religious beliefs." (SAC ¶ 59). Plaintiff contends W.P. and C.B. submitted separate requests for religious exemptions, and the VEC granted W.P. an exemption but denied the same to C.B.

He also alleges a court clerk, Milena Scheib, and another full-time OCA employee, Deborah Ghent, are Catholic and submitted requests for religious exemptions. He alleges their applications were "substantially similar to that submitted by plaintiff, invoking the same doctrinal basis in support of their requests for religious exemption," and that their applications were granted. (SAC ¶¶ 63–64).

According to plaintiff, OCA has granted "hundreds" of religious exemptions to employees who share plaintiff's basic religious belief, which he describes in the SAC as: "that God does not condone introducing medical treatment like vaccination into a healthy body, but does not prohibit a body in crises from accepting medical interventions." (SAC ¶ 72).

Plaintiff alleges defendants' conduct has caused him significant insomnia, cold sweats, elevated levels of stress, and an intrusion into his medical and personal history. Plaintiff also alleges "defendants have repeatedly and unconstitutionally claimed that the position of one or another Popes on vaccinations substantially bears upon the bona fides of plaintiff's religious beliefs." (SAC ¶ 89).

II.     New York State Division of Human Rights Complaint

On December 28, 2021, plaintiff filed a charge of unlawful discrimination with the New York State Division of Human Rights ("NYSDHR") regarding his exemption denial. In that charge, an incomplete version of which is attached to the SAC (see SAC at ECF 20), plaintiff explained other Catholics and people of different faiths had been provided religious exemptions

but that, without explanation, his request was denied, representing religious discrimination.  He also complained of religious discrimination in the form of being required to test weekly for COVID-19, notwithstanding that he was previously infected with COVID-19, "thereby gaining natural immunity," but others "who did not have Covid, but have been vaccinated" did not have to test.  (Id. at ECF 22).

On July 6, 2022, the NYSDHR dismissed plaintiff's charge, having determined "there is NO PROBABLE CAUSE to believe that [OCA] has engaged in or is engaging in the unlawful discriminatory practice complained of" because "the investigation revealed [OCA] denied Complainant's request because he failed to articulate a consistently applied religious belief that conflicts with [OCA's] mandatory COVID-19 vaccination policy," not that plaintiff was unlawfully discriminated against.  (Doc. #74-10 at 1–2).[7]

III.    Referral to the Commission on Judicial Conduct

On January 6, 2022, plaintiff alleges defendant Chief Administrative Judge Marks referred plaintiff to the New York State Commission on Judicial Conduct ("CJC") regarding plaintiff's failure to submit proof of his COVID-19 vaccination by January 3, 2022.  Plaintiff argues this referral was made even though the Vaccine Mandate does not state that a judge who is denied a religious exemption and refuses to get vaccinated will be subject to discipline.

---

[7]     The Court may consider NYSDHR's resolution of plaintiff's complaint, submitted by OCA with its motion papers, in connection with these motions because plaintiff makes factual allegations about the substance of his NYSHDR complaint and attaches part of it to the SAC, yet omits and does not discuss the resolution of that complaint.  See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 421–22 (2d Cir. 2011) (considering emails submitted by the defendant that were identified in the plaintiff's complaint, but not attached to it, as integral to the complaint, in connection with a Rule 12(c) motion).

According to plaintiff, Marks's referral did not request any particular action but stated the referral was for the CJC's "consideration and appropriate action."  (SAC ¶ 67).  Plaintiff alleges the CJC has yet to take action on Marks's referral, but that the CJC has "made intrusive inquiries into plaintiff and his families' medical records, and his children's school records."  (Id. ¶ 71).

Plaintiff also alleges another jurist of the Norwich City Court, identified as M.G., was permitted "to continue working from his courthouse" and that the VEC "did not refer him to the Commission [on Judicial Conduct]," notwithstanding that the VEC denied M.G.'s requests for religious and medical exemptions.  (SAC ¶ 87).

**DISCUSSION**

I.    Standard of Review

A.    Rule 12(b)(1)

A district court must dismiss an action pursuant to Rule 12(b)(1) "for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it."  Conn. Parents Union v. Russell-Tucker, 8 F.4th 167, 172 (2d Cir. 2021).

When deciding a Rule 12(b)(1) motion at the pleading stage, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor," except for "argumentative inferences favorable to the party asserting jurisdiction."  Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order).  To the extent a Rule 12(b)(1) motion places jurisdictional facts in dispute, the district court may resolve the disputed jurisdictional fact issues by referring to evidence outside the pleadings.  Amidax Trading Grp. V. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).

In addition, when a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court should consider the Rule 12(b)(1) challenge first.  Rhulen Agency,

11

Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

B.     Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.     Injunctive Relief

Defendants argue plaintiff's request for injunctive relief is moot because OCA has withdrawn the Vaccine Mandate and fully reinstated plaintiff's in-person duties.

The Court agrees.

Plaintiff seeks injunctive relief compelling defendants to take certain actions in their official capacities—namely, to reverse the denial of his exemption request, and to grant him exemption from any future vaccine mandates.

The Eleventh Amendment precludes suits against states and state agencies unless the state expressly waives its sovereign immunity or Congress abrogates that immunity.  <u>See Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 72–73 (1996).  However, suits against state officers seeking prospective injunctive relief are authorized by the Supreme Court's decision in <u>Ex Parte Young</u>, 209 U.S. 123 (1908).   To "avoid the Eleventh Amendment bar to suit" and seek injunctive relief from state officers, a plaintiff must "(a) allege[ ] an ongoing violation of federal law and (b) seek[ ] relief properly characterized as prospective."  <u>In re Deposit Ins. Agency</u>, 482 F.3d 612, 618 (2d Cir. 2007).

Here, the Vaccine Mandate has been repealed, and plaintiff has been reinstated to his full in-person duties.  Therefore, plaintiff has not alleged an ongoing violation of federal law, or a need for prospective relief.

Plaintiff argues he does seek prospective relief: an order requiring defendants to exempt him from all vaccine mandates on religious grounds.  However the SAC does not allege the existence of any other vaccine mandate from which he seeks an exemption.  Plaintiff's prediction of a future public health emergency in which his COVID-19 Vaccine Mandate exemption denial will "be held against" him is speculative, and is not an ongoing violation of federal law supporting a request for injunctive relief.  (Doc. #86 ("Pl. Opp.") at 8).

Accordingly, plaintiff's request for injunctive relief must be dismissed.

III.     Claims Against OCA

Plaintiff asserts two claims against OCA arising from the denial of his exemption request and limitations on plaintiff's ability to enter the Poughkeepsie courthouse and perform certain duties:  (i) a Section 1983 claim alleging OCA violated the First Amendment's free exercise clause, and (ii) a Title VII claim alleging OCA improperly discriminated against him on the basis of religion.  Both claims must be dismissed.

A.     Section 1983 Claim Against OCA

OCA argues plaintiff cannot state a Section 1983 claim against it because it is a government entity, and therefore, protected against such suits by the Eleventh Amendment.

The Court agrees.

"[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009).  "[T]he New York State Unified Court System is an arm of the State . . . and is therefore protected by Eleventh Amendment sovereign immunity."  Gollomp v. Spitzer, 568 F.3d at 366.

New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983.  Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 40 (2d Cir. 1977); see also Gollomp v. Spitzer, 568 F.3d at 366 (dismissing Section 1983 claims against the New York State Unified Court System as barred by Eleventh Amendment sovereign immunity).  Thus, Section 1983 does not override the Eleventh Amendment, and plaintiff's Section 1983 claim for money damages against OCA is barred by the Eleventh Amendment.

Accordingly, the Section 1983 claim against OCA must be dismissed.

14

B.     Title VII Claim Against OCA

OCA argues plaintiff's Title VII claim must be dismissed because plaintiff is not an "employee" of OCA for purposes of Title VII.

The Court agrees.

Title VII protects employees from employment discrimination based on certain protected characteristics.  See 42 U.S.C. § 2000e-2(a).  "Employee," for Title VII purposes, means "an individual employed by an employer,"  but specifically excludes:

> any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

Id. § 2000e(f) (emphasis added).  The Supreme Court has held that the exemption for an "'appointee on the policymaking level' is sufficiently broad" that it exempts "appointed state judges." Gregory v. Ashcroft, 501 U.S. 452, 467 (1991) (interpreting identical language in the definition of "employee" in the Age Discrimination in Employment Act of 1967 (the "ADEA")).

Here, plaintiff is a "duly appointed . . . City Court Judge."  (SAC ¶ 1).[8]  Moreover, plaintiff, who conducts criminal proceedings as a "substantial share of [his] workload" (SAC ¶ 47), certainly "exercise[s] [ ] discretion concerning issues of public importance."  Gregory v. Ashscroft, 501 U.S. at 466–67.  Therefore, plaintiff falls within the exemption for an "appointee on the policy making level" and is not an "employee" for purposes of Title VII.

---

[8]     The Court cannot consider the appointment letters OCA submitted with its motion to dismiss (see Docs. ##74-1, 74-2), because they are not attached to or incorporated by reference in the SAC, and plaintiff did not rely heavily upon the terms and effect of those letters in drafting the SAC.  However, plaintiff does not contest that he was appointed by an elected official.  (See SAC ¶ 1; see also Pl. Opp. at 23–24).

Plaintiff argues Gregory v. Ashcroft should not apply to plaintiff's Title VII claim because Gregory v. Ashcroft interpreted the definition of "employee" in the ADEA.  (Pl. Opp. at 23).  However, "[t]he definition of an employee in both statutes is identical."  Fischer v. New York State Dep't of Law, 2014 WL 12674462, at *2 n.1 (S.D.N.Y. June 20, 2014).  This is because "[i]n 1974, Congress amended the ADEA, adopting verbatim the definition of employee found in Title VII."  Butler v. New York State Dep't of Law, 211 F.3d 739, 747 (2d Cir. 2000).  Thus, courts generally analyze the "policymaker exemption" to Title VII and the ADEA the same.  See id.

For example, the Second Circuit has applied Gregory v. Ashcroft to a Title VII claim brought by a former deputy bureau chief for the New York State Law Department, who the Circuit determined was an appointee policymaker exempt from the Title VII definition of "employee."  See Butler v. New York State Dep't of Law, 211 F.3d at 739 (affirming grant of summary judgment); see also Zagaja v. Vill. of Freeport, 2015 WL 3507353, at *13 (E.D.N.Y. June 3, 2015) (granting motion to dismiss Title VII claim).  Moreover, several federal courts have dismissed Title VII claims brought by judges on this basis.  See Wheale v. Polk Cnty., 2022 WL 4953350, at *3 (11th Cir. Oct. 4, 2022) (affirming dismissal of Title VII claims brought by a juvenile court judge); Spann-Wilder v. City of N. Charleston, 2010 WL 3222235, at *5 (D.S.C. Aug. 13, 2010) (granting summary judgment dismissing Title VII claim brought by a municipal judge).  Plaintiff likewise falls within the policymaker exemption, and cannot bring a claim pursuant to Title VII.

Accordingly, plaintiff's Title VII claim against OCA must be dismissed.

IV.    <u>Claims Against the Individual Defendants</u>

Plaintiff asserts the following claims against the Individual Defendants, all pursuant to Section 1983:[9]  (i) First Amendment free exercise claims against the VEC Defendants for denying plaintiff's request for a religious exemption and "barring him from his place of work" (SAC ¶ 99),  and against defendants Marks, Amaker, and Minihan for imposing and enforcing limitations on plaintiff's ability to enter the courthouse in an allegedly overbroad, selective, and irrational basis;[10] (ii) a First Amendment retaliation claim against Marks for referring plaintiff to the CJC; and (iii) a Fourteenth Amendment equal protection claim against the VEC Defendants for denying his religious exemption while allegedly approving exemptions submitted by similarly situated persons.  For the reasons that follow, each claim must be dismissed.

---

[9]     In his opposition, plaintiff clarifies that he is suing the Individual Defendants only in their personal capacities, and not in their official capacities.  (Pl. Opp. at 9).

[10]     Although plaintiff's fourth cause of action seems to assert a selective enforcement claim arising under the Equal Protection Clause, it does not refer to the Fourteenth Amendment or the Equal Protection Clause.  (<u>see</u> SAC ¶ 103 ("By imposing and enforcing prohibitions against him in an overbroad, selective, and irrational basis, defendants UCS, Marks, Amaker, and Minihan have each violated plaintiff's free exercise rights of his religion as guaranteed by the First Amendment.")).  Accordingly, the Court treats plaintiff's fourth cause of action as pleaded—a First Amendment free exercise claim.

However, even if plaintiff had intended to assert a Fourteenth Amendment selective enforcement claim against Marks, Amaker, and Minihan, he has failed to plead that claim. Plaintiff claims he was treated differently from M.G., who was allegedly allowed to continue working from his courthouse after being denied religious and medical exemptions.  However, plaintiff has not alleged that M.G. refused to get vaccinated once his exemption requests were denied, as plaintiff did, and therefore, that M.G. was "similarly situated" to plaintiff, or any facts that indicate the allegedly different treatment plaintiff received was "was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  <u>Crowley v. Courville</u>, 76 F.3d 47, 52–53 (2d Cir. 1996).  Accordingly, even considered through the lens of the Equal Protection Clause, plaintiff's claim would be dismissed.

A.     Personal Involvement of the VEC Defendants

The VEC Defendants argue plaintiff's Section 1983 claims against them must be dismissed because plaintiff does not allege which VEC Defendants reviewed (and denied) his exemption request.

The Court disagrees.

Plaintiff contends he is suing all VEC members because none of his written communications with the VEC revealed who reviewed his exemption request and the VEC never met with him personally to discuss his exemption request.

At this early stage, it is reasonable to infer that any or all of the VEC Defendants could have participated in reviewing and denying plaintiff's exemption request, and thus the Court will not dismiss claims against the VEC Defendants based on lack of personal involvement.  See Collins v. City Univ. of N.Y., 2023 WL 1818547, at *6 (S.D.N.Y. Feb. 8, 2023).

However, as discussed below, plaintiff's First Amendment free exercise claim and Fourteenth Amendment equal protection claim against the VEC Defendants must be dismissed for failure to state a claim.

B.     Free Exercise Claims

The VEC Defendants and defendants Marks, Amaker, and Minihan argue plaintiff fails to state a free exercise claim because the Vaccine Mandate, as plaintiff alleges it was applied to him, is a neutral and generally applicable rule that passes rational basis review.

The Court agrees.

1.     Legal Standard

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const., Amend. I.  It

18

"protects an individual's private right to religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion."  Kane v. De Blasio, 19 F.4th 152, 163–64 (2d Cir. 2021).

"This protection, however, 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability.'"  Kane v. De Blasio, 19 F.4th at 164 (quoting Emp. Div., Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 879 (1990)).  Thus, "a state can determine that a certain harm should be prohibited generally, and a citizen is not, under the auspices of her religion, constitutionally entitled to an exemption."  We the Patriots USA, Inc. v. Hochul, 17 F.4th 266, 281 (2d Cir.), opinion clarified, 17 F.4th 368 (2d Cir. 2021), cert. denied sub nom., Dr. A. v. Hochul, 142 S. Ct. 2569 (2022).

 "[A] law that incidentally burdens religious exercise is constitutional when it (1) is neutral and generally applicable and (2) satisfies rational basis review."  We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev., 76 F.4th 130, 144  (2d Cir. 2023).  "If the law is not neutral or not generally applicable, it is subject to strict scrutiny, and the burden shifts to the government to establish that the law is narrowly tailored to advance a compelling government interest."  Id.

Regarding neutrality, "the minimum requirement of neutrality is that a law not discriminate on its face."  Kane v. De Blasio, 19 F.4th at 164.  In addition, "[t]he State fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature."  We The Patriots USA, Inc. v. Hochul, 17 F.4th at 281.  "To fail the neutrality prong, it is not enough for a law to simply affect religious practice; the law or the process of its enactment must demonstrate hostility to religion."  We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev., 76 F.4th at 145.

Regarding general applicability, a law is not generally applicable "if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions"; or "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." We the Patriots USA, Inc. v. Hochul, 17 F.4th at 284.  But "[a]n exemption is not individualized simply because it contains express exceptions for objectively defined categories of persons."  Kane v. De Blasio, 19 F.4th at 165.  For a law that includes exemptions to not be "generally applicable, 'there must be some showing that the exemption procedures allow secularly motivated conduct to be favored over religiously motivated conduct.'"  Ferelli v. Unified Court Sys., 2022 WL 673863, at *6 (N.D.N.Y. Mar. 7, 2022) (quoting Kane v. De Blasio, 19 F.4th at 165).

### 2.    Application

Here, plaintiff fails to allege the Vaccine Mandate as applied violated his free exercise rights.[11]

First, the Vaccine Mandate is neutral.  "[I]t applies to all judges and employees of the state court system, and in no way singles out those who decline vaccination on religious grounds."  Ferrelli v. Unified Court Sys., 2022 WL 673863, at *6 (considering the same Vaccine Mandate on a motion for a preliminary injunction and temporary restraining order brought by OCA employees who sought and were denied religious exemptions).  Moreover "[p]laintiff has

---

[11]    The Court fairly construes the SAC to complain of how the Vaccine Mandate was applied to plaintiff, not to assert facial challenges to the Vaccine Mandate.  (See SAC ¶ 99 (claiming the VEC Defendants violated the free exercise clause "[b]y wrongfully failing to recognize his sincerely held religious beliefs, denying him a religious exemption, and barring him from his place of work", ¶ 103 (claiming defendants Marks, Amaker, and Minihan violated plaintiff's free exercise rights "[b]y imposing and enforcing prohibitions against him in an overbroad, selective, and irrational basis").  However, plaintiff also fails to plead a facial challenge to the Vaccine Mandate for the same reasons his "as applied" challenge fails—that is, because the Vaccine Mandate, as alleged, is neutral and generally applicable and withstands rational basis scrutiny.

not pleaded, nor argued, any facts that suggest that the purpose of the rule was to suppress or discriminate against religion, rather than to protect the workers" of OCA "and those interacting with them from a highly contagious and potentially fatal virus." Algarin v. NYC Health & Hosps. Corp., 2023 WL 4157164, at *12 (S.D.N.Y. June 23, 2023).

That plaintiff's exemption request was denied does not obviate the Vaccine Mandate's neutrality. See Collins v. City Univ. of N.Y., 2023 WL 1818547, at *8 (quoting Phillips v. City of N.Y., 775 F.3d 538, 543 (2d Cir. 2015)). In fact, by "permit[ting] exemptions for [employees] who put forth sincerely held religious beliefs," the Vaccine Mandate "goes beyond what the Constitution requires." Id.

Thus, plaintiff has alleged the Vaccine Mandate was applied to him neutrally.

Second, the Vaccine Mandate is generally applicable. The exemption application required applicants to describe the sincerely held religious beliefs that prevented them from being vaccinated against COVID-19, and the supplemental form asked applicants to support their professed religious beliefs by describing their prior and anticipated conduct respecting medicines and vaccines. Thus, the religious exemption application and supplemental form did "not presuppose the illegitimacy" of plaintiff's articulated religious beliefs, but "merely [sought] to determine whether such concerns are the applicant's true motivation for seeking an exemption." Ferrelli v. Unified Court Sys., 2022 WL 673863, at *8.

"While a state is not entitled to evaluate the legitimacy of religious beliefs, courts have made clear that the state is permitted to assess whether a belief is sincerely held and religious in nature." Brignall v. New York State Unified Court Sys., 2022 WL 17543641, at *7 (N.Y. Sup. Ct. Steuben Cnty. Apr. 13, 2022) (considering a motion to preliminarily enjoin the same Vaccine Mandate on free exercise and equal protection grounds). Here, the Vaccine Mandate did "not

create[ ] a system of individualized exemptions and refuse[ ] to extend it to religious hardships."
Ferrelli v. Unified Court Sys., 2022 WL 673863, at *7.  Rather, the mandate created a "system of
religious exemptions" that permissibly permitted the VEC to assess the sincerity of applicants'
professed beliefs, but "refused to extend it to Plaintiff[ ] based on [plaintiff's] responses, or lack
thereof, to a supplemental form."  Id.

Moreover, plaintiff has not alleged the VEC Defendants "favored certain religious beliefs
over others."  Ferrelli v. Unified Court Sys., 2022 WL 673863, at *8.  In fact, plaintiff alleges
two Catholic employees of OCA submitted applications for religious exemptions "substantially
similar to that submitted by plaintiff, invoking the same doctrinal basis in support," that were
granted.  (SAC ¶ 62).  Nor has he alleged that exemption applications based on comparable
secular conduct were favored.

Therefore, plaintiff has not pleaded that the Vaccine Mandate provided a mechanism for
individualized exemptions or prohibited religious conduct while permitting comparable secular
conduct.

Accordingly, the Vaccine Mandate, as plaintiff alleges it was applied to him, is neutral
and generally applicable, and is subject to rational basis review, a level of scrutiny it easily
passes.[12]

First, "[s]temming the spread of COVID-19 is unquestionably a compelling interest," and
therefore is certainly a legitimate one.  Roman Catholic Diocese of Brooklyn v. Cuomo, 141

---

[12]    Even if the Court had determined that the Vaccine Mandate, as alleged by plaintiff, was
subject to strict scrutiny, at least one court has determined it would "satisfy that rigorous test,"
and this Court agrees.  See Ferrelli v. Unified Court Sys., 2022 WL 673863, at *8; see also
UnifySCC v. Cody, 2022 WL 2357068, at *8 (N.D. Cal. June 30, 2022) (vaccine mandate with
an exemption for sincerely held religious beliefs applicable to all Santa Clara County employees
was subject to rational basis review but would more likely than not survive strict scrutiny).

S.Ct. 63, 67 (2020).   Second, the Vaccine Mandate is rationally related to furthering that interest because it maximizes the vaccination rates of OCA employees against COVID-19, whom members of the public are required to interact with, including criminal defendants, lawyers for parties in civil and criminal actions, and the parties themselves.

Accordingly, plaintiff's First Amendment free exercise claims must be dismissed.[13]

---

[13]      A New York state court recently determined OCA acted arbitrarily and capriciously in denying certain religious exemption applications under the same Vaccine Mandate based on applicants' reservations regarding the COVID-19 vaccines being tested on fetal cell lines. See Ventresca-Cohen v. DiFiore, 77 Misc. 3d 652 (N.Y. Sup. Ct. Albany Cnty. 2022).  However, plaintiff is incorrect that Ventresca-Cohen supports his position.  The religious beliefs plaintiff professed have nothing to do with fetal cell lines.  Moreover, the Ventresca-Cohen court determined OCA did not act arbitrarily and capriciously when it denied exemption requests based on the applicant's belief in the sanctity and purity of the body, or because the applicant failed to identify a particular religious belief or tenet or comply with OCA's requests for further information.  Id. at 667, 668.  The court also noted how other courts had "repeatedly rejected requests for injunctions and/or dismissed facial challenges to the Unified Court System's COVID-19 vaccination policy."  Id. at 663 n.3 (collecting cases); see also Brignall v. New York State Unified Court Sys., 2022 WL 17543641, at *2 (denying a motion to preliminarily enjoin the Vaccine Mandate, holding "UCS had a rational basis for implementing the [Vaccine Mandate] as a means for achieving its goal of minimizing the spread of COVID-19 through the UCS facilities and maintaining an accessible forum for justice.").

      Plaintiff also submitted, as supplemental authority in support of his opposition, another recent state court case, Cooper v. Roswell Park Comprehensive Cancer Ctr., 2023 WL 5660095 (N.Y. Sup. Ct. Aug. 17, 2023).  The Cooper court vacated an arbitration award approving the termination of a nurse's employment for failure to comply with the vaccine mandate for New York State healthcare workers as contrary to public policy.  Id. at *15.  Specifically, the plaintiff in Cooper was granted a religious exemption to that mandate, only to have it subsequently revoked.  Id. at *2.  Her employment was suspended without pay the following day, and a notice of discipline was imposed three days later.  Id.  However, at the time of the arbitration decision, the vaccine mandate at issue in Cooper, which was promulgated by statute by a different government authority, had been held unconstitutional by a state court for violating existing law preventing the Commissioner of Health for the State of New York from ordering mandatory immunization.  See id. at **2, 4.  Thus, the facts surrounding and legal standards governing the plaintiff's claims in Cooper are inapplicable to plaintiff's free exercise and equal protection claims in this action, which challenge a different vaccine policy promulgated by the New York courts.

C.      First Amendment Retaliation Claim

Defendant Marks argues plaintiff's First Amendment retaliation claim must be dismissed because the CJC has not yet concluded its investigation and, therefore, the claim is not ripe for review, and because plaintiff has failed to state a retaliation claim.

The Court agrees the claim must be dismissed for failure to state a claim.

1.      Legal Standard

"To survive a motion to dismiss, a plaintiff claiming that he was retaliated against in violation of the First Amendment must plausibly allege that (1) he engaged in speech or activity that was protected by the First Amendment; (2) he suffered an adverse employment action; and (3) a causal connection existed between the adverse action and the protected activity." Specht v. City of New York, 15 F.4th 594, 600–01 (2d Cir. 2021). "The speech of a public employee is protected by the First Amendment when the employee speaks as a citizen on a matter of public concern, rather than pursuant to his employment responsibilities." Id. at 601.

"[O]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006). "In this context, adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand" although "lesser actions" such as "negative evaluation letters" or "express accusations of lying" may also be considered adverse employment actions. Id. at 226.

Adverse actions "may also include a pattern of harassment, where, using an objective standard, a plaintiff shows that the total circumstances of [his] working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace." Montero v. City of Yonkers, 890 F.3d 386, 400 (2d Cir. 2018). The "test

for determining whether an employer has taken adverse action is not wooden:  it must be tailored to the different circumstances in which retaliation claims arise."  Specht v. City of New York, 15 F.4th at 604.  However, the alleged act of retaliation must be "more than de minimis." Zelnik v. Fashion Inst. of Tech., 464 F.3d at 226.

To "plausibly allege a causal connection between the adverse employment action and the protected activity," the plaintiff must allege "the protected activity was a substantial motivating factor in the adverse employment action." Specht v. City of New York, 15 F.4th at 604–05.

2.    Application

Even assuming plaintiff has pleaded he engaged in protected speech—that is, assuming submitting a private application for a vaccine exemption (or his complaints to defendant Minihan about not being granted the requested exemption) comprise protected speech—and causation, he has not alleged that he suffered adverse action.

Although plaintiff alleges Marks referred him to the CJC, a disciplinary committee, "for its consideration and appropriate action" (SAC ¶ 67), the CJC has not concluded its investigation or imposed discipline.

Mere referral to a disciplinary body, without any resulting discipline, is not a sufficiently adverse employment action to deter a similarly situated individual to plaintiff—a judge—from exercising his constitutional rights.  See Murray v. Town of North Hempstead, 853 F. Supp. 2d 247, 269 (E.D.N.Y. 2012) (threats of termination and the consideration of disciplinary charges were not adverse employment actions).

Accordingly, the First Amendment retaliation claim against Marks must be dismissed.

D.      Equal Protection Claim

The VEC Defendants argue the equal protection claim against them must be dismissed because plaintiff has failed to plead he was treated differently from a similarly situated individual or that these defendants acted with discriminatory intent in denying plaintiff's application for a religious exemption.

The Court agrees.

In order to state a selective enforcement equal protection claim, a plaintiff must plausibly allege:  "(1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Crowley v. Courville, 76 F.3d 47, 52–53 (2d Cir. 1996).[14]

Plaintiff does not identify any similarly situated individuals that the VEC Defendants treated differently.  He identifies one other judge and two non-judicial employees who were granted religious exemptions but does not allege facts that would permit the Court to reasonably infer that those applications relied on the same purported religious tenets as plaintiff.  Regarding the other judge, W.P., plaintiff alleges only that W.P. was Catholic.  And regarding the two non-judicial employees, he claims only that they submitted "substantially similar" applications to that submitted by plaintiff, which is conclusory and insufficient to plead that those individuals are similarly situated to plaintiff.

---

[14]      "[T]he class-of-one theory of equal protection does not apply in the public employment context."  Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008).  Therefore, plaintiff cannot state an equal protection claim by "claim[ing] that [he] has been irrationally singled out as a so-called 'class of one,'" without any allegation of class-based discrimination.  Id. at 601.

And even if plaintiff had adequately alleged he was treated differently from similarly situated individuals, he does not allege he was "treated less favorably [than such similarly situated individuals] because of his religious affiliation—which is the protected class at issue in [plaintiff's] class-wide selective enforcement claim." King v. City of New York, 581 F. Supp. 3d 559, 576 (S.D.N.Y. 2022), aff'd, 2023 WL 2398679 (2d Cir. 2023).  Indeed, plaintiff contends OCA has granted "hundreds" of religious exemptions to employees who "profess the same basic religious belief as plaintiff holds" (SAC ¶ 72), from which the Court may reasonably infer that it was not the substance of plaintiff's stated religious beliefs that resulted in his request being denied.  Nor has plaintiff pleaded any facts that indicate his application was denied based on other impermissible considerations.

Moreover, "[w]hen a free exercise challenge fails, any equal protection claims brought on the same grounds are subject only to rational-basis review." Kane v. De Blasio, 19 F.4th at 167 n.14; see also Locke v. Davey, 540 U.S. 712, 720 n.3 (2004) ("Because we hold . . . that the [challenged] program is not a violation of the Free Exercise Clause . . . we apply rational-basis scrutiny to [the plaintiff's] equal protection claims" premised on the same program.)); We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev., 76 F.4th at 158.  Because plaintiff failed to state a free exercise claim against the VEC Defendants based on the same conduct, and the Vaccine Mandate, as alleged by plaintiff, survives rational basis review, his equal protection claim premised on the same conduct must fail.

Accordingly, plaintiff's equal protection claim against the VEC Defendants must be dismissed.

## CONCLUSION

The motions to dismiss are GRANTED.

The Clerk is instructed to terminate the motions (Docs. ##70, 73, 81) and close this case.

Dated: September 19, 2023
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge